CHRISTOPHER KIRBY #178508
A.S.P.C. TUCSON RINCON UNIT
P.O. BOX 24403
TUCSON, AZ 85734



# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CHRISTOPHER J. KIRBY, ) | FEDERAL 1983 COMPLAINT |
| Plaintiff, ) | JURY-TRIAL DEMANDED |
| V.            ) | |
| PIMA COUNTY OF ARIZONA, et, al., ) | CASE No. CV-23-00495-TUC-JGZ(PSOT) |
| Defendants. ) | |

This is a civil rights action filed by Mr. Christopher Kirby, a state prisoner, for damages and relief under 42 U.S.C. 1983, alleging acts of deliberate indifference to a serious medical need in violation of the Eighth Amendment to the United States Constitution.

### ---JURISDICTION---

THIS Court has jurisdiction over the plaintiff's claim of and for a violation of Federal constitutional rights under 42 U.S.C. 1331(1) AND 1343.

### ---PARTIES---

1. The plaintiff: CHRISTOPHER KIRBY was incarcerated at the Pima County Jail, during the events described in this complaint.

2. Defendant: Unknown Cota, is a Sheriff Detention officer at the Pima County Jail, he is being sued in his individual capacity.

3. Defendant: Unknown Bradley, is a Sheriff Detention officer at the Pima County Jail, he is being sued in his individual capacity.

4. Defendant: Unknown Maganelli, is a Sheriff Detention officer at the Pima County Jail, he is being sued in his individual capacity.

5. Defendant: Pima County of Arizona is being sued in its official capacity under municipal liability.

---SUPPORTED LEGAL FOUNDATION---
----MEDICAL CARE LEGAL STANDARD----

1. The plaintiff, Mr. Kirby alleges that he has been denied treatment for his serious medical need by defendant's Cota, Bradley, and Maganelli act[s] of deliberate indifference in violation of the Eighth Amendment.
See Estelle v. Gamble, 429 U.S 97, 103 (1976) (Prisoner[s] Have a basic right to health care and humane conditions of confinement, protected by the Eighth Amendment, prohibiting cruel and unusual punishment).
To prevail on an Eighth Amendment medical care claim, a prisoner must demonstrate "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble)).
There are two prongs to this analysis: an objective prong and a subjective prong. First, as to the objective prong, a prisoner must show a "serious medical need." Jett, 439 F.3d at 1096 (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" Mc.Guckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Tecchs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir 1997) (en banc) (internal citation omitted).
Second, as to the subjective prong, a prisoner must show that the defendant's response to that need was deliberately indifferent. Jett, 439 F3d at 1096. An official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. 825, 837 (1994). To satisfy the knowledge component, the official must both "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. "Prison officials are deliberate indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment," Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted), or when they fail to respond to a prisoner's pain or possible medical need. Jett, 439 F.3d at 1096.

2. Defendant Pima County is being sued in its official capacity under municipal liability due to Pima County being the final policymaker and governing/delegating authority to the Pima county Sheriff.

---RELEVANT FACTS---

1. Plaintiff in this case was an inmate within the Arizona Dep't of Correction (ADCRR). While in ADCRR, plaintiff was transferred to the Pima County Jail on/during the month of June, of 2023.

2. Prior to the plaintiff being transferred to the Pima County Jail. The Plaintiff had a Superior Court Judge place an order on June 8th, 2023 which stated: the court request the Pima County Sheriff's Department, upon Christopher Kirby's arrival at the Pima County Jail, accommodates Kirby's needs to the best of the jails ability based on Mr. Kirby's disabilities. Despite this Court Order the Pima County Sheriff did not make any inquiry in to the plaintiffs disability, had they done so they would have known that the plaintiff has a serious heart condition that causes the plaintiff to pass out and needed special housing accommodation.

3. ADCRR –Following: "A.R.S. 31-224" sent the Pima County Jail a copy of the plaintiff's medical file/standardized medical record summary. Within the plaintiff's file that was sent to the Pima County jail included the following information in part: Plaintiff's current medical issues, medications, and special needs orders from a medical provider. More specifically the Pima County Jail was informed that the plaintiff had a serious heart condition called "Wolf-Parkinson-white-syndrome, Bradicardia and Tachycardia; the Pima County Jail was informed that the plaintiff had an active special needs order for a lower bunk due to symptoms of syncope (passing out).

4. ADCRR medical provider Garcia issued the plaintiff a special needs order on 5/26/2023, active until 5/27/24, stating: condition to be treated: syncope lower bunk order.

5. ADCRR medical provider issued the plaintiff a special needs order on 4/17/2023, active until 6/15/24, stating: condition to be treated: Heart condition. Patient may be excused from work, group, school when symptomatic for his heart condition and experiencing dizziness and fatigue.

6. The plaintiff has a loop-recorder placed into his chest cavity wall which records/monitors plaintiff's heart. The last time the plaintiff was seen by the heart specialist it was discovered that the plaintiff's heart beat drops down to 29 BPM and goes up and over 140 BPM. When this happens to the plaintiff he becomes dizzy and sometimes passes out. The plaintiff has an upcoming appointment with the heart specialist and shall be receiving a pace-maker.

7. Once plaintiff was transferred to the Pima County Jail. The plaintiff had to wait in intake at the jail in order to be booked in. As part of the intake process, the plaintiff had to be evaluated by a nurse in order to be cleared for housing and seen by classification.

8. During the evaluation with the nurse, the plaintiff informed the nurse that he had active special needs orders, issued by Naphcare/ADCRR, stating the plaintiff was to be housed on a lower tier due to his heart condition that causes a symptom of passing out. The nurse stated that she was aware of the special needs orders as ADCRR has provided that information.

9. The plaintiff was seen by the jails classification officer and the plaintiff informed this classification officer of his heart condition and of his need to be housed on a lower tier.

10. Despite the fact of the Pima County Jail being informed of plaintiff's serious heart condition and of the active medical orders for a lower bunk/lower tier. The Pima County Jail decided to place/house the plaintiff on/in an upper tier housing location.

11. On June 23, 2023 – the plaintiff suffered an incident of syncope –passed out inside of his cell – fell down and hit the back of his head. The pod officer for 1 EF notified medical and the plaintiff was taken to the medical unit and evaluated. Plaintiff was issued a Pima County Adult Detention Complex Medical Alert; which ordered the Jail to house the plaintiff on a lower floor, no stairs and given a lower bunk.

12. On June 23, 2023 upon receiving the medical alert order and after returning from the medical unit. The plaintiff was moved off of the upper tier housing location and placed into a cell on the lower tier.

13. On July 2nd, 2023, during the first shift the plaintiff was relocated to a different location of the jail and placed in 4-Able pod/unit. Upon arriving at the 4-able pod/unit, the plaintiff was informed that he was to be housed into a cell that was located on the upper tier. Defendant Cota was assigned to 4-able as an officer to implement security for the location. The plaintiff informed defendant Cota that plaintiff had a heart condition that causes the plaintiff to pass out and that he had has a prior incident at the jail in which he passed out and hit his head. The plaintiff also informed defendant Cota that he was provided a medical alert form from the jail's medical which ordered the plaintiff to be housed on a lower tier and a lower bunk.

14. Defendant Cota stated that he did not care about the plaintiff's complaints and that the plaintiff did not get to dictate his housing location. Plaintiff was forced to go to his upper tier cell and lock down.

15. After the plaintiff got into his assigned upper tier cell located in 4-able, plaintiff had his property given to him by defendant Cota. The plaintiff stopped defendant Cota during one of his security walks and produced to defendant Cota by showing him all of the copies the plaintiff had showing all special needs orders. Specifically the order to be housed on a lower tier. Defendant Cota said he had nothing to do with housing and did not care.

16. Later on in the day, on second shift, date of July 2nd, 2023. The plaintiff informed defendant Bradley (who was the assigned officer for 4 -able pod/unit) that plaintiff had a heart condition that causes the plaintiff to pass out and that he had has a prior incident at the jail in which he passed out and hit his head. The plaintiff also informed defendant Bradley that he was provided a medical alert form from the jail's medical ordering the plaintiff to be housed on a lower tier and a lower bunk. Plaintiff showed defendant Bradley copies of the medical orders. Defendant Bradley refused to take any action.

17. The following day, during the morning shift, on July 3rd, 2023, plaintiff had a nurse come to his upper tier cell so that vital signs could be taken of the plaintiff. To take the vital signs the nurse had defendant Maganelli open the small trap door of the plaintiff's cell door. During this interaction the plaintiff took this opportunity to inform defendant Maganelli that plaintiff had a heart condition that causes the plaintiff to pass out and that he had has a prior incident at the jail in which he passed out and hit his head. The plaintiff also informed defendant Maganelli that he was provided a medical alert form from the jail's medical provider ordering the plaintiff to be housed on a lower tier and a lower bunk. Plaintiff showed defendant Maganelli copies of the medical orders. The nurse also informed defendant Maganelli that plaintiff was correct and should be housed on the lower tier. Defendant Maganelli refused to take any action.

18. On July 3rd, 2023, later in the day, on second shift, the plaintiff was released from his upper tier cell so that he could take his shower. Plaintiff was informed that he had to take a shower down stairs. The plaintiff did so. After taking his shower the plaintiff took some time to use the cleaning supplies so that he could clean his dirty cell. After the plaintiff cleaned his cell the plaintiff went to return the cleaning supplies back to their proper location which was down stairs. In the process of doing so the plaintiff suffered an episode of syncope/passing out while he was descending the units/pods stairs. The plaintiff fell down 3/4th of a flight of stairs. The plaintiff had to be taken to the hospital by ambulance. The plaintiff suffered injuries to his leg, ankle, head, shoulder, back and neck. The plaintiff returned to the jail and had to remain in the medical observation unit for 2-3 weeks/ until plaintiff was transferred back to the Arizona Dep't of corrections. The plaintiff has continued to have issues with his back, legs and feet ever since the fall down the stairs.

19. Plaintiff would not have suffered a fall down the stairs had defendant's Cota, Bradley, and Maganelli done what they should have done by simply picking up the unit (officers) phone and notified their supervisor that there was an inmate improperly housed and had a medical alert form ordering the inmate/plaintiff to be housed on a lower tier lower bunk housing location.

20. There are two prongs to this analysis: an objective prong and a subjective prong. First, as to the objective prong, Plaintiff has stated a "serious medical need." The serious medical need is a "heart condition – Wolf – Parkinson – white syndrome, Bradicardia and Tachycardia". Plaintiff has stated that he had an active order for a lower tier lower bunk housing order from a medical provider.

    Second, as to the subjective prong, plaintiff has stated that defendant's Cota, Bradley, and Maganelli response to that need was deliberately indifferent. The stated defendants acted with deliberate indifference because they "knew of and disregards an excessive risk to the plaintiff's health and safety.

    To satisfy the knowledge component, defendant's Cota, Bradley, and Maganelli were all "aware of facts that the plaintiff had a heart condition that caused the plaintiff to have symptoms of syncope, the defendant's knew that the plaintiff had an active medical alert/order from the provider mandating the need for plaintiff to be housed on a lower tier and lower bunk and not to be using stairs. The fact that they refused to take any actions with the knowledge given to them; shows their inference could be drawn that a substantial risk of serious harm existed, and they also draw the inference."

    Defendant's Cota, Bradley, and Maganelli are also deliberating indifferent to plaintiff's serious medical need because they intentionally interfere with the medical treatment that was order for the plaintiff by a medical provider.

21. Plaintiff seeks $25,000.00 from each named defendant in this case for injuries that accord from the defendant's deliberate indifference to plaintiff's serious medical needs.

22. In the event that plaintiff cannot sue the defendants in their individual capacity and this court decides that the only defendant in this case can be the City of Pima County under municipal liability due to Pima County being the final policymaker and governing/delegating authority to the Pima county Sheriff. The plaintiff seeks 75,000.00 in damages.

I, Christopher Kirby, acting as a pro se litigant hereby declare under penalty of perjury that all stated information herein is true in fact and is stated pursuant to 28 U.S.C. 1746. Please be advised the plaintiff is using this typed format due to his disability/non ability to hand-write because of his hand deformity.

CHRISTOPHER J. KIRBY

*Christopher Kirby*

Date of: October 14, 2023